Filed 6/24/14  Cortina v. Wells Fargo Advisors CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| AVELINO CORTINA III, | D064516 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00036936-CU-JR-CTL) |
| WELLS FARGO ADVISORS, LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Randa Trapp, Judge.  Affirmed.

TechLaw and Dana B. Robinson for Plaintiff and Appellant.

Albert & Will and Mitchell J. Albert for Defendant and Respondent.

# I.

## INTRODUCTION

Appellant Avelino Cortina III appeals from the judgment of the trial court entered after the trial court confirmed an arbitration award entered against Cortina and in favor of respondent Wells Fargo Advisors, LLC (Wells Fargo).

During his employment as a financial advisor with Wells Fargo, Cortina signed three promissory notes. Under the terms of the notes, Cortina agreed to pay any remaining balances on the notes upon the termination of his employment with Wells Fargo. Cortina resigned from his position at Wells Fargo, but did not pay the balances on the promissory notes. Wells Fargo filed a claim for arbitration with the Financial Industry Regulatory Authority (FINRA). Wells Fargo prevailed in the arbitration and was awarded a sum equal to the remaining balances due on the promissory notes.

Cortina petitioned the trial court to vacate the arbitration award, and Wells Fargo petitioned to have the arbitration award confirmed by the court. The court confirmed the arbitration award and denied Cortina's petition to vacate the award.

On appeal, Cortina contends that the trial court erred in denying his request to vacate the arbitration award. Cortina asserts that in denying his motion to compel certain e-mail evidence from Wells Fargo related to what he suggests were attempts to restructure the promissory notes with his superiors, the FINRA panel effectively refused to hear material evidence.

We conclude that the arbitration panel's ruling with respect to Cortina's motion to compel was a decision of law made by the panel, and, as such, is not subject to review by a court. Further, Cortina has not demonstrated that the arbitration panel failed to hear pertinent evidence as a result of its denial of his motion to compel. We therefore affirm the judgment of the trial court.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.   *Factual background*

Cortina was employed as a financial advisor at Citigroup in 2008. At some point, Cortina decided to move his book of business to Wachovia. Cortina began working for Wachovia on September 1, 2008. On that date, Cortina signed a promissory note in the amount of $983,389. On October 3, 2008, Wells Fargo acquired Wachovia.

Pursuant to an "Offer Summary" between Cortina and Wells Fargo, Cortina was to receive monthly bonus payments that were approximately equal to the monthly payment that Cortina owed Wells Fargo under the first promissory note, for reasons that are not apparent from the record. However, on the termination of Cortina's employment, the outstanding balance on the first promissory note would become immediately due and payable and the bonus payments would terminate.

Cortina subsequently signed two additional promissory notes, in the amounts of $275,349 (signed October 15, 2009) and $364,062.46 (signed May 15, 2010). Cortina was entitled to receive monthly bonus payments that were roughly equal to the monthly

3

payments on the second and third promissory notes, as well, as long as he remained employed by Wells Fargo.

Cortina resigned from Wells Fargo on June 3, 2011. According to Cortina, prior to his resignation, he had attempted to restructure the promissory notes. However, "[w]hen the parties reached an impasse, [Cortina] resigned." Cortina failed to pay the outstanding balances on the promissory notes.[1]

B.      *Procedural background*

Wells Fargo filed a statement of claim for arbitration against Cortina with FINRA on or around January 5, 2012. The claim alleged that Cortina failed to pay money owed to Wells Fargo on the three promissory notes that became due and payable upon Cortina's termination of employment with Wells Fargo.

At the conclusion of the arbitration process, the arbitration panel entered an award in favor of Wells Fargo in the amount of $1,568,786.20, plus $15,000 for attorney fees.

Cortina petitioned the trial court to vacate the arbitration award, on several grounds. Approximately three months later, Wells Fargo filed a cross-petition to confirm the arbitration award. Wells Fargo also filed an opposition to Cortina's petition to vacate the arbitration award.

The trial court granted Wells Fargo's petition to confirm the arbitration award, and denied Cortina's petition to vacate the award. The court entered judgment against Cortina

---

[1]     At the time of Cortina's resignation, the balances on the three notes were $794,775.86, $287,144.20, and $340,124.

4

on August 29, 2013, in the amount of $1,568,786.20 plus interest and fees. Cortina filed a timely notice of appeal.

III.

DISCUSSION

A. *Legal standards*

We review *de novo* a trial court's ruling regarding a petition to confirm or vacate an arbitration award. (*Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9.)

"[I]t is the general rule that, with narrow exceptions, an arbitrator's decision cannot be reviewed [by a court] for errors of fact or law." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 11 (*Moncharsh*).) "Ensuring arbitral finality . . . requires that judicial intervention in the arbitration process be minimized. [Citations.] Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration. Thus, an arbitration decision is final and conclusive because the parties have agreed that it be so. By ensuring that an arbitrator's decision is final and binding, courts simply assure that the parties receive the benefit of their bargain." (*Id*. at p. 10, italics omitted.)

"[T]he Legislature has reduced the risk to the parties of [an erroneous] decision [by an arbitrator] by providing for judicial review in circumstances involving serious problems with the award itself, or with the fairness of the arbitration process."

5

(*Moncharsh*, *supra*, 3 Cal.4th at p. 12.)  For example, Code of Civil Procedure[2] section 1286.2 sets forth the grounds for vacating an arbitrator's award.  That section states in pertinent part:

> "(a) [T]he court shall vacate the award if the court determines that: [¶]  (1) The award was procured by corruption, fraud or other undue means.  [¶]  (2) There was corruption in any of the arbitrators.  [¶] (3) The rights of the party were substantially prejudiced by misconduct of a neutral arbitrator.  [¶]  (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted.  [¶]  (5) The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title.  [¶]  (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives."[3]

---

[2]    Further statutory references are to the Code of Civil Procedure.

[3]    In addition, section 1286.6 provides limited grounds for the correction of an arbitration award, providing in pertinent part: "[T]he court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶]  (a) There was an evident miscalculation of figures or an evident mistake in the description of any person, thing or property referred to in the award; [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted; or [¶] (c) The award is imperfect in a matter of form, not affecting the merits of the controversy."

"In light of these statutory provisions, the residual risk to the parties of an arbitrator's erroneous decision represents an acceptable cost—obtaining the expedience and financial savings that the arbitration process provides—as compared to the judicial process."  (*Moncharsh*, *supra*, 3 Cal.4th at p. 13.)

"When parties contract to resolve their disputes by private arbitration, their agreement ordinarily contemplates that the arbitrator will have the power to decide any question of contract interpretation, historical fact or general law necessary, in the arbitrator's understanding of the case, to reach a decision.  [Citations.]  Inherent in that power is the possibility the arbitrator may err in deciding some aspect of the case.  Arbitrators do not ordinarily exceed their contractually created powers simply by reaching an erroneous conclusion on a contested issue of law or fact, and arbitral awards may not ordinarily be vacated because of such error, for ' "[t]he arbitrator's resolution of these issues is what the parties bargained for in the arbitration agreement." '  [Citation.]" (*Gueyffier v. Ann Summers, Ltd*. (2008) 43 Cal.4th 1179, 1185.)

B.    *Analysis*

Cortina contends that the trial court should have vacated the arbitration award against him pursuant to section 1286.2, subdivision (a)(5), on the ground that he was " 'substantially prejudiced . . . by the refusal of the arbitrators to hear evidence material to the controversy.' "  According to Cortina, he requested from Wells Fargo "all e-mails regarding my promissory notes and this arbitration," but Wells Fargo "denied his requests, arguing that evidence relating to this restructuring is irrelevant."  Wells Fargo

7

produced 12 e-mails in response to Cortina's request. According to Cortina, there were far more than 12 e-mails in Wells Fargo's possession that included discussions regarding the promissory notes at issue.

Cortina filed with the arbitration panel a motion to compel additional e-mail communications from Wells Fargo, but the panel denied his motion. Cortina is now attempting to frame that ruling as one that resulted in the arbitration panel "refus[ing] to hear pertinent evidence to the controversy." We disagree. The arbitration panel's discovery ruling is not reviewable by a court, even if the panel's decision resulted from an error of law. Further, Cortina has not established that the evidence in the e-mails was relevant to the arbitration proceeding.

"Discovery in arbitration is generally limited." (*Berglund v. Arthroscopic & Laser Surgery Center of San Diego, L.P.* (2008) 44 Cal.4th 528, 534 (*Berglund*).) Further, all discovery disputes between parties to an arbitration agreement must be submitted "to the arbitral, not the judicial, forum." (*Id*. at p. 535.) " 'It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy. [Citation.] The arbitrator, and not the court, decides questions of procedure and discovery. [Citations.]' " (*Briggs v. Resolution Remedies* (2008) 168 Cal.App.4th 1395, 1400.)

"Arbitrators do not 'exceed[] their powers' within the meaning of [the arbitration provisions in the Code of Civil Procedure] 'merely by rendering an erroneous decision on a legal or factual issue, so long as the issue was within the scope of the controversy submitted to the arbitrators. "The arbitrator's resolution of these issues is what the parties

8

bargained for in the arbitration agreement." [Citation.]' [Citation.]" In short, 'having submitted the [discovery] issue to arbitration, [a party] cannot maintain the arbitrator[] exceeded [his or her] powers, within the meaning of section 1286.6, subdivision (b), by deciding it, even if [he or she] decided it incorrectly.' [Citation.]" (*Alexander v. Blue Cross of California* (2001) 88 Cal.App.4th 1082, 1089.) Thus, even if an arbitrator's discovery ruling was incorrect, reviewing that decision for correctness is not within the court's authority. (*Moncharsh. supra*, 3 Cal.4th at p. 28.)

Cortina is, in effect, asking us to review the arbitration panel's ruling regarding his discovery motion by contending that the arbitration panel's decision prevented the panel from reviewing evidence material to the arbitration. However, rulings regarding discovery and procedure are within the arbitration panel's authority, and we are without power to review those rulings, even if erroneous.

In any event, Cortina's contention that he was "substantially prejudiced" by the "failure of the Panel to hear material evidence" is belied by his own acknowledgment that the e-mails that he sought in discovery involved, at most, discussions concerning Cortina's *attempt* to restructure the promissory notes. Acknowledging that his attempt to restructure the notes was unsuccessful, Cortina admits that he resigned "[w]hen the parties reached an impasse" with respect to any restructuring. Cortina has not established that the e-mails that he sought in discovery are at all relevant to the material question at issue in the arbitration—i.e., whether Cortina was under an obligation to pay the

9

remaining balances on the promissory notes that he signed in favor of Wells Fargo once his employment with Wells Fargo terminated.

The arbitration panel did not refuse to "hear material evidence" in denying Cortina's motion to compel Wells Fargo to produce all of the e-mails related to Cortina's attempt to restructure the promissory notes.

IV.

DISPOSITION

The judgment of the trial court is affirmed.

_____

AARON, J.

WE CONCUR:

_____

McCONNELL, P. J.

_____

NARES, J.

10