Opinion
 

 TODD, Acting P. J.
 

 Factual and Procedural Background
 

 In 1990, David Balestrieri and Michael Keenan (collectively investors) opened securities accounts with Titan/Value Equities Group, Inc. (Titan). At the time of opening the accounts, they signed forms agreeing to submit any dispute to arbitration before the National Association of Securities Dealers
 
 *485
 
 (NASD). In 1992, however, the investors filed suit against Titan, two Titan employees,
 
 [1]
 
 AIMCO, Patrick Payne (Payne), and Payne’s wife, Elizabeth Kincannon (Kincannon), among others in superior court for alleged losses they suffered in connection with the trading.
 

 Titan responded by filing a petition to compel arbitration on behalf of the Titan defendants, and the investors in turn submitted their claims against Titan to arbitration. The court accordingly denied the petition as moot in light of the investors’ stipulation to arbitrate and submission of claims to arbitration, and stayed the superior court action as to Titan in December 1992.
 
 [2]
 
 The investors later signed and filed with NASD Uniform Submission Agreements which provide, inter alia, the parties “submit the . . . matter ... to arbitration in accordance with the . . . Code of Arbitration Procedure” and “agree and understand that the arbitration will be conducted in accordance with the . . . Code of Arbitration Procedure . . . .”
 

 It seems, however, the arbitration never got off the ground as a result of a series of problems including the bankruptcy of defendants Payne and Kincannon, discovery disputes and scheduling conflicts. In February 1994, the investors’ counsel appeared at a progress conference before Judge Adams unattended by counsel for the Titan defendants, Payne, Kincannon or defendant Marvin Friedman (Friedman),
 
 [3]
 
 expressed frustration with the arbitration, and asked the court to “take control of the case.” The trial court reasserted jurisdiction, set the case on the trial calendar for June 10 and agreed that an informal notice of ruling should be sent to the Titan defendants.
 

 After receiving notice, the Titan defendants filed a motion seeking reconsideration, confirmation of their right to arbitration, an order staying the superior court action or, alternatively, an order compelling arbitration. At about the same time, Friedman also filed a motion to compel arbitration based on the agreement in the AIMCO customer account forms to submit
 
 *486
 
 any controversy to arbitration with NASD. The trial court issued a telephonic ruling on April 1 which: granted Friedman’s petition to compel arbitration; required the Titan defendants to respond fully to each of the discovery requests propounded in the NASD proceedings; ordered the parties to conduct the arbitration before the end of June on dates mutually convenient to the investors’ counsel and arbitration panel members; required defendants to retain new counsel if the dates were inconvenient; allowed the investors one continuance of the arbitration after it was calendared for good cause, but permitted no continuances for the defendants; left the June 10 trial date on calendar so the case could be tried “in the event of a failure to conduct the arbitration by June 30th regardless of the reason”; required all counsel to appear on June 10 to report on the status of the arbitration; and determined the arbitration would proceed with defendant AIMCO in default and the statement of claim modified to include the investors’ first and second amendments.
 

 The Titan defendants did not request oral argument. Although Friedman requested it and appeared on April 8, the telephonic ruling was confirmed, and the court ordered Friedman into the NASD arbitration subject to the above conditions.
 

 Payne and Kincannon
 
 [4]
 
 also specially appeared at the April 8 argument to clarify whether the court intended to include them in the April 1 order. Because original service of the complaint was rendered ineffective by virtue of the bankruptcy, the judge deemed Payne and Kincannon served with the latest amendments on the day of the hearing, ordered Payne to arbitration with the rest of the defendants, and ordered Kincannon to trial in September.
 

 The Titan defendants, Friedman, Payne and Kincannon followed by filing these petitions for writ of mandate or prohibition. We consolidated the petitions, stayed the trial court’s orders and issued an order to show cause.
 

 Discussion
 

 At issue here is the ability of a trial court to interfere in a matter that has been submitted to arbitration. The Titan defendants, Friedman,
 
 *487
 
 Payne and Kincannon argue the court may not order a case to arbitration and stay the lawsuit while, at the same time, reserving authority over the arbitration.
 

 The investors take the position that the conditions imposed by the trial court are reasonable. Relying on
 
 Preston
 
 v.
 
 Kaiser Foundation Hospitals
 
 (1981) 126 Cal.App.3d 402 [178 Cal.Rptr. 882], they argue the court has power to intervene on behalf of parties stalled in arbitration, adding the defendants have breached the arbitration agreement by virtue of their misconduct and the breach entitles the investors to rescind the stipulation to arbitrate.
 
 [5]
 

 I
 

 Code of Civil Procedure
 
 [6]
 
 section 1281.4 requires a court to stay an action submitted to arbitration pursuant to an agreement of the parties. Beyond that, the court’s role is fairly limited. Once a petition is granted and the lawsuit is stayed, “the action at law sits in the twilight zone of abatement with the trial court retaining merely vestigial jurisdiction over matters submitted to arbitration.”
 
 (Brock
 
 v.
 
 Kaiser Foundation Hospitals
 
 (1992) 10 Cal.App.4th 1790, 1796 [13 Cal.Rptr.2d 678].) During that time, under its “vestigial” jurisdiction, a court may: appoint arbitrators if the method selected by the parties fails (§ 1281.6); grant a provisional remedy “but only upon the ground that the award to which an applicant may be entitled may be rendered ineffectual without provisional relief” (§ 1281.8, subd. (b)); and confirm, correct or vacate the arbitration award (§ 1285). Absent an agreement to withdraw the controversy from arbitration, however, no other judicial act is authorized.
 
 (Byerly
 
 v.
 
 Sale
 
 (1988) 204 Cal.App.3d 1312, 1315 [251 Cal.Rptr. 749].)
 

 In the interim, the arbitrator takes over. It is the job of the arbitrator, not the court, to resolve all questions needed to determine the controversy.
 
 (Van Tassel
 
 v.
 
 Superior Court
 
 (1974) 12 Cal.3d 624, 627 [116 Cal.Rptr. 505, 526
 
 *488
 
 P.2d 969], citing
 
 Felner
 
 v.
 
 Meritplan Ins. Co.
 
 (1970) 6 Cal.App.3d 540, 546 [86 Cal.Rptr. 178].) The arbitrator, and not the court, decides questions of procedure
 
 [7]
 
 and discovery.
 
 (East San Bernardino County Water Dist.
 
 v.
 
 City of San Bernardino
 
 (1973) 33 Cal.App.3d 942, 950-951 [109 Cal.Rptr. 510];
 
 Brock
 
 v.
 
 Kaiser Foundation Hospitals, supra,
 
 10 Cal.App.4th at p. 1802;
 
 McRae
 
 v.
 
 Superior Court
 
 (1963) 221 Cal.App.2d 166, 171 [34 Cal.Rptr. 346].) It is also up to the arbitrator, and not the court, to grant relief for delay in bringing an arbitration to a resolution.
 
 [8]
 

 (Brock
 
 v.
 
 Kaiser Foundation Hospitals, supra,
 
 10 Cal.App.4th at p. 1808;
 
 Byerly
 
 v.
 
 Sale, supra,
 
 204 Cal.App.3d at p. 1316; see also
 
 Nanfito
 
 v.
 
 Superior Court
 
 (1991) 2 Cal.App.4th 315, 318-319 [2 Cal.Rptr.2d 876].) As the court reasoned in
 
 McRae
 
 v.
 
 Superior Court, supra,
 
 221 Cal.App.2d at page 171: “When it has been determined that arbitration should be pursued and all judicial proceedings have been suspended until completion of the arbitration, it would be wholly incompatible with established policies of the law to permit the court thereafter to intervene in, and necessarily to interfere with, the arbitration ordered. In large measure, it would not only preclude the parties from obtaining ‘an adjustment of their differences by a tribunal of their choosing,’ but it would also recreate the very ‘delays incident to a civil action’ that the arbitration agreement was designed to avoid.”
 

 II
 

 In our case, the trial court exceeded its jurisdiction in ordering the arbitration to proceed under the stated conditions subject to reinstatement on the trial calendar. As pointed out by the defendants, under the Code of Arbitration Procedure, the director of the NASD arbitration proceedings sets
 
 *489
 
 the time and place of the hearing and, among other things, has established-procedures for discovery, resolution of discovery disputes and amendment of claims. (Code of Arb. Proc., §§ 26, 32(d), 39.)
 

 “[A]n arbitration has a life of its own outside the judicial system.”
 
 (Byerly
 
 v.
 
 Sale, supra,
 
 204 Cal.App.3d at p. 1316.) The trial court may not step into a case submitted to arbitration and tell the arbitrator what to do and when to do it: it may not resolve procedural questions, order discovery, determine the status of claims before the arbitrator or set the case for trial because of a party’s alleged dilatory conduct. It is for the arbitrator, and not the court, to resolve such questions. The petitions for writ of prohibition are granted.
 

 Let a writ of prohibition issue directing the trial court to vacate its orders of April 1, 1994, and April 8, 1994, and enter an order consistent with this opinion. The stay orders issued on April 27, 1994, and May 10, 1994, are vacated.
 

 Benke, J., and Nares, J., concurred.
 

 [1]
 

 Titan and its employees are collectively referred to as the Titan defendants.
 

 [2]
 

 Although the investors did not submit their claims against the two Titan employees to arbitration, the court stayed the action as to one employee in January 1993 and the other employee in January 1994, and ordered that the claims against them be arbitrated pursuant to the stipulation of the parties.
 

 [3]
 

 Friedman, an AIMCO representative, was not originally named in the complaint. He was, however, named in the NASD proceeding in September 1993 and personally served with the summons and complaint as Doe 2 in December 1993. He is alleged to be an alter ego of AIMCO by the investors.
 

 [4]
 

 Payne and Kincannon went into bankruptcy in August 1992 when the complaint was served. The investors, however, were not granted relief from the automatic stay until December 1993.
 

 [5]
 

 We note there are a number of procedural irregularities in this case. Among others, it appears there was never any motion concerning, let alone a determination of, Payne and Kincannon’s amenability to arbitration. We do not reach this issue, however, because it was not directly raised or briefed.
 

 [6]
 

 All statutory references are to the Code of Civil Procedure unless otherwise specified.
 

 [7]
 

 Among other procedural issues, the arbitrator may determine compliance with prearbitration grievance procedures necessary to invoke the arbitration, form and sequence of the arbitration and methods for selecting arbitrators. (See
 
 John Wiley & Sons, Inc.
 
 v.
 
 Livingston
 
 (1964) 376 U.S. 543, 557 [11 L.Ed.2d 898, 908-909, 84 S.Ct. 909];
 
 Office & Professional Employees Union
 
 v.
 
 Sea-Land Service, Inc.
 
 (1979) 90 Cal.App.3d 844, 850 [153 Cal.Rptr. 621];
 
 Atlas Plastering, Inc.
 
 v.
 
 Superior Court
 
 (1977) 72 Cal.App.3d 63, 71-72 [140 Cal.Rptr. 59].)
 

 [8]
 

 In holding the court does not have jurisdiction to dismiss a contractual arbitration because of a party’s dilatory tactics,
 
 Brock
 
 criticizes the
 
 Preston
 
 case
 
 (Preston
 
 v.
 
 Kaiser Foundation Hospitals, supra,
 
 126 Cal.App.3d 402, cited by the investors) for its skewed analysis and lack of authority, favoring instead the approach in more recent cases such as
 
 Byerly. (Brock
 
 v.
 
 Kaiser Foundation Hospitals, supra,
 
 10 Cal.App.4th at pp. 1804-1805.) Notably, in
 
 Byerly,
 
 Division Three of our district declined to follow
 
 Preston
 
 finding it “unsupported, and unsupportable, in law or logic.”
 
 (Byerly
 
 v.
 
 Sale, supra,
 
 204 Cal.App.3d at p. 1316, fn. 3.)